BROWN v. PONTIAC, OXFORD & NORTHERN RAILROAD CO.

1. CARRIERS—INJURY TO SHIPPER—DELIVERY OF CAR—QUESTION FOR JURY.
   Where a shipper of live stock agreed with the company's agent at the point of destination that, on the arrival of the car, it should be placed at a cattle-chute to permit him to unload, and the car was so placed, and detached from the train by the brakeman, who told the shipper it was "all right," it was a question for the jury whether the shipper, who was injured by the backing of the train against the car while he was unloading it, had a right to assume that the car had been delivered to him.

2. SAME.
   Irrespective of such prior agreement, and though there was no showing of any formal action by the conductor, it was for the jury to say whether a delivery of the car was not intended;

it appearing that there was no other place at which the stock could be unloaded.

3. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.
    In an action against a railroad company by a shipper for injuries received by the backing of a train against a car which he was unloading, where the testimony was conflicting as to whether he was in position to see the approaching train, the question of his contributory negligence was for the jury.

Error to Tuscola; Beach, J. Submitted April 24, 1903. (Docket No. 53.) Decided May 29, 1903.

Case by Frank Brown against the Pontiac, Oxford & Northern Railroad Company for personal injuries. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

*D. S. McClure* and *C. F. Gates*, for appellant.

*John H. Patterson*, for appellee.

MONTGOMERY, J. This is an action for negligent injury. The plaintiff received the injuries of which he complains while attempting to unload from a car on the defendant's side track at Kingston two head of cattle and one calf, which, with household goods of plaintiff, constituted the shipment in said car, which had on the day in question been shipped from Leonard to Kingston. While plaintiff was so engaged in unloading the car, the defendant's train backed up against it, was coupled to it, moved forward, and caused the injuries which plaintiff sustained. Plaintiff's testimony tended to show that, in the position in which he was at the time the train was backed against the car which he was unloading, it was impossible to extricate himself until the forward movement of the car threw him to the ground and caused the injuries complained of.

The circuit judge, at the conclusion of the plaintiff's case, directed a verdict for the defendant. We are therefore to consider the case as made by the plaintiff's testimony, placing the most favorable construction upon the

same, as we are bound to do. It appears by this' testimony, in addition to the circumstances of the injury itself, as above detailed, that on the day in question the plaintiff shipped this car load of household goods and live stock from Leonard to Kingston. During the day, and while the car was in transit, the plaintiff called upon the station agent at Kingston, and arranged with the agent that the company should place the car, on its arrival, at the point where the injury occurred; that, after the car was so placed, the plaintiff should unload the live stock, and the car should then be moved back farther south, so that he could remove from it the balance of the property. When the train reached Kingston it was backed up to the cattle-chute,—the place designated by the agent in the arrangement made in advance,—the brakeman observing from the opposite side of the car, and looking underneath it, that the door of the car was opposite the chute; and, replying to plaintiff's inquiry as to whether it was all right, that it was, he cut off the car, left it there, and pulled the train forward. It was after this had occurred that the plaintiff attempted to unload the car.

The circuit judge's direction proceeded upon the view that, as the control of the train was with the conductor, there had been no delivery of this car; that no one having authority had said to plaintiff, in substance or effect, " Here is the car; we deliver it to you." The fault in this view is that it takes no account whatever of the previous arrangement with the station agent. It was not so much a question of who had control of the train while in operation. The fact appeared to be that the car had been located at the point previously agreed upon between the plaintiff and the station agent having control of the business at that point, and we think it was a question for the jury as to whether the plaintiff, in view of this previous talk, had the right to assume that this car was so placed with the purpose of delivering it to him. If it were, it was certainly a delivery.

But, even apart from this previous arrangement, we

think it would be a question for the jury as to whether the backing of this car down to the cattle-chute, locating it there, detaching the train from it, and leaving it in position, was not intended as a delivery, in view of the fact that the car contained live stock, which it must have been known to the conductor should be unloaded at this station, and could be unloaded at no other point than the cattle-chute. The inference would not be open that this car was so located at the initiative of the brakeman, who happened to be present at that part of the train, and who placed it. On the contrary, the fair inference would be that the master of the train had directed this to be done.

In the brief of defendant's counsel the claim is made that the plaintiff was guilty of contributory negligence; it being contended that, standing on the east side of the car, where plaintiff was located, the car could be seen coming from the north. But the plaintiff's testimony shows that from the point where he was standing on the gang-plank, and close up to the car door, an approaching car could not be seen. We think the question of plaintiff's contributory negligence was, at the most, a question for the jury.

Judgment will be reversed, and a new trial ordered.

The other Justices concurred.